**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| STEPHEN L. PIERCE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No.:  1:24-cv-00679-RGA |
| | ) | |
| DELAWARE RIVER AND BAY | ) | |
| AUTHORITY; CITY OF DOVER, | ) | |
| POLICE ACADEMY; and | ) | |
| WILLIE JOHNSON, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT DELAWARE RIVER AND BAY AUTHORITY'S**
**OPENING BRIEF IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT AGAINST PLAINTIFF STEPHEN PIERCE**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Michael P. Stafford (Bar I.D. 4461)
Alpa V. Bhatia (Bar I.D. 6977)
1000 North King Street
Wilmington, Delaware 19801
Phone: (302) 571-6553; 571-6747
Email:  mstafford@ycst.com; abhatia@ycst.com

*Attorneys for Defendant, Delaware River and Bay*
*Authority*

Dated:  July 1, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

SUMMARY OF ARGUMENT ................................................................................. 2

STATEMENT OF FACTS ........................................................................................ 2

    I.      The Parties and their Employment Relationship ...................................... 2

    II.     DRBA's Hiring Process ............................................................................ 3

    III.    Plaintiff's Training At The Academy ....................................................... 4

    IV.    Plaintiff's Dismissal From The Academy And Subsequent Termination
          From DRBA .............................................................................................. 6

    V.     Plaintiff's Complaint of Unfair Treatment ............................................. 6

    VI.    Plaintiff's Present Claims ........................................................................ 8

ARGUMENT .......................................................................................................... 9

    I.      Standard of Review .................................................................................. 9

    II.     DRBA Is Entitled To Summary Judgment on Plaintiff's ADEA Claim ............. 10

          A.     Plaintiff Fails to Establish a *Prima Facie* Case of Age
                Discrimination ................................................................................. 10

                1.     Plaintiff Was Not Qualified for the Position in Question ............. 11

                2.     DRBA Had Legitimate, Non-Discriminatory Reasons for
                      Terminating Plaintiff's Employment And There is No
                      Evidence Which Would Lead a Reasonable Fact-Finder to
                      Disbelieve DRBA's Proffered Reason ......................................... 11

          B.     Plaintiff Has Failed to Establish a *Prima Facie* Case of Retaliation
                 Because His Alleged Complaint of Unfair Treatment Occurred
                 After His Termination ..................................................................... 12

          C.     The Alleged Comments Made By DRBA Do Not Give Rise To a
                Hostile Work Environment Claim .................................................. 13

    III.    DRBA Is Entitled To Summary Judgment Because Plaintiff Cannot
          Establish All Elements For a Claim of Perceived Disability Discrimination ....... 14

          A.     Plaintiff Fails to Establish That He Was "Regarded As" Having a
                 Disability By DRBA ...................................................................... 14

i

B.    Plaintiff Has Not Established That He Was Qualified To Perform the Essential Functions of the Job............................................................. 16

C.    Plaintiff Cannot Rebut DRBA's Legitimate, Non-Discriminatory Reasons For Terminating His Employment............................................... 17

D.    Plaintiff Has Failed to Establish The Elements of a *Prima Facie* ADA Retaliation Claim................................................................. 17

IV.    Summary Judgment Should Be Granted Because Plaintiff Fails to Establish *Prima Facie* Case for First Amendment Retaliation............................ 18

CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Abington Friends Sch.*,
   215 F. App'x 83 (3d Cir. 2006) ............................................................................. 14

*Alja-Iz v. U.S. Virgin Islands Dep't of Educ.*,
   626 F. App'x 44 (3d Cir. 2015) ................................................................ 12, 13, 15

*Alred v. Eli Lilly & Co.*,
   771 F. Supp. 2d 356 (D. Del. 2011) ..................................................................... 10

*Ambrose v. Twp. of Robinson, Pa.*,
   303 F.3d 488 (3d Cir.2002) .................................................................................. 18

*Anderson v. Wachovia Mortg. Corp.*,
   621 F.3d 261 (3d Cir.2010) .................................................................................. 15

*Ashley v. Bayhealth Med. Ctr., Inc.*,
   869 F. Supp. 2d 544 (D. Del. 2012) ....................................................................... 9

*Bell v. City of Philadelphia*,
   275 F. App'x 157 (3d Cir. 2008) ..................................................................... 19, 20

*Blozis v. Mellon Tr. of Delaware Nat. Ass'n*,
   494 F. Supp. 2d 258 (D. Del. 2007) ..................................................................... 13

*Callan v. City of Dover*,
   65 F. Supp. 3d 387 (D. Del. 2014) ....................................................................... 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .......................................... 9

*Chandler v. City of Dallas*,
   2 F.3d 1385 (5th Cir. 1993) ................................................................................. 16

*Clemons v. New Castle Cnty.*,
   2020 WL 5978343 (D. Del. Oct. 8, 2020) ............................................................ 18

*Cleveland v. Pol'y Mgmt. Sys. Corp.*,
   526 U.S. 795 (1999) .............................................................................................. 12

*Connick v. Myers*,
   461 U.S. 138 (1983) .............................................................................................. 20

*Curinga v. City of Clairton*,
   357 F.3d 305 (3d Cir.2004) .................................................................................. 18

*D.E. v. Central Dauphin Sch. Dist.*,
  765 F.3d 260 (3d Cir. 2014) .................................................................... 9

*Detz v. Greiner Indus., Inc.*,
  346 F.3d 109 (3d Cir. 2003) .................................................................... 12

*Farrell v. Planters Lifesavers Co.*,
  206 F.3d 271 (3d Cir. 2000) .................................................................... 20

*Fowler v. AT&T, Inc.*,
  19 F.4th 292 (3d Cir. 2021) .................................................................... 12

*Fuentes v. Perskie*,
  32 F.3d 759 (3d Cir. 1994) ............................................................... 10, 14

*Gaul v. Lucent Techs. Inc.*,
  134 F.3d 576 (3d Cir.1998) .................................................................... 16

*Glanzman v. Metro. Mgmt. Corp.*,
  391 F.3d 506 (3d Cir. 2004) .................................................................... 13

*Gustovich v. AT&T Communications, Inc.*,
  972 F.2d 845 (7th Cir. 1992) .................................................................. 10

*Hill v. Borough of Kutztown*,
  455 F.3d 225 (3d Cir. 2006) .................................................................... 18

*Horowitz v. Fed. Kemper Life Assurance Co.*,
  57 F.3d 300 (3d Cir.1995) ....................................................................... 9

*Josey v. John R. Hollingsworth Corp.*,
  996 F.2d 632 (3d Cir. 1993) .................................................................... 10

*Justice v. Danberg*,
  571 F. Supp. 2d 602 (D. Del. 2008) ........................................................ 18

*Jutrowski v. Twp. of Riverdale*,
  904 F.3d 280 (3d Cir. 2018) ..................................................................... 9

*Katz v. Beebe Healthcare*,
  2025 WL 1094406 (D. Del. Apr. 11, 2025) ............................................. 13

*Kelly v. Drexel Univ.*,
  94 F.3d 102 (3d Cir. 1996) ..................................................................... 15

*Konits v. Valley Stream Cent. High Sch. Dist.*,
  394 F.3d 121 (2d Cir. 2005) .................................................................... 19

*Lewis v. Cowen*,
  165 F.3d 154 (2d Cir. 1999) .................................................................... 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ............................................................................................... 9

*Moore v. Staples, Inc.,*
    635 F. Supp. 2d 337 (D. Del. 2009) .................................................................... 10

*Motley v. N.J. State Police,*
    196 F.3d 160 (3d Cir.1999) ................................................................................. 12

*Pierce v. Donahoe,*
    963 F. Supp. 2d 366 (D. Del. 2013) .................................................................... 13

*Rinehimer v. Cemcolift, Inc.,*
    292 F.3d 375 (3d Cir. 2002) ................................................................................ 15

*Spence-Parker v. Delaware River & Bay Auth.,*
    616 F. Supp. 2d 509 (D.N.J. 2009) ........................................................................ 1

*Turner v. Hershey Chocolate U.S.,*
    440 F.3d 604 (3d Cir. 2006) ................................................................................ 16

**Rules**

Federal Rule of Civil Procedure 56(a) ............................................................................ 9

**Regulations**

29 C.F.R. § 1630.2(n)(1) ................................................................................................ 16

29 C.F.R. § 1630.2(n)(1)-(2) .......................................................................................... 16

## NATURE AND STAGE OF PROCEEDINGS

This is an employment dispute arising under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") and the Delaware Discrimination Employment Act ("DDEA")[1].  Plaintiff Stephen L. Pierce ("Plaintiff" or "Pierce") alleges that the City of Dover Police Academy (the "Academy") and Delaware River and Bay Authority ("DRBA" or "Moving Defendant") (DRBA and the Academy, collectively "Defendants") subjected him to a hostile work environment and unlawfully terminated his employment for discriminatory and retaliatory reasons, on the basis of age and perceived disability. Plaintiff further contends that Defendants retaliated against him based on his engagement in activity protected under the First Amendment. DRBA vehemently denies these allegations.

Plaintiff filed a Complaint in this Court on June 7, 2024. (D.I. 1). DRBA timely filed its Answer on August 9, 2024. (D.I. 9). A Scheduling Order was entered on September 19, 2024. (D.I. 13). On April 25, 2025, the Court granted a brief extension of the applicable discovery deadlines. Discovery has now concluded.

This is DRBA's Opening Brief in Support of Its Motion for Summary Judgment.

---

[1] Plaintiff indicated in his Complaint that he has not yet exhausted his administrative remedies with respect to claims related to alleged violations of the DDEA, and has not referenced the DDEA other than in his introductory paragraph. (D.I. 1 at 2, fn. 1). Plaintiff notes that he will amend the Complaint upon administrative exhaustion, but no amendment has been filed to date. As such, this Motion does not address any DDEA claims, and it is Moving Defendant's position that such claims have been waived. To the extent these claims are not waived, DRBA asserts that Plaintiff may not sustain a claim under the DDEA against it. See *Spence-Parker v. Delaware River & Bay Auth.*, 616 F. Supp. 2d 509, 521 (D.N.J. 2009)("Nothing in the language of the Compact suggests that New Jersey and Delaware intended for the NJLAD or the DDEA to apply to the DRBA, and neither of the states' antidiscrimination laws appears to mention the DRBA. Under the express intent standard…the absence of an express statement that the states intended for one or both of these antidiscrimination statutes to apply to the DRBA renders Plaintiff's [state discrimination] claim unsustainable.").

## SUMMARY OF ARGUMENT

1.      Summary judgment should be entered on Plaintiff's claim of violations of the ADEA because: (a) he cannot establish a *prima facie* case of age discrimination; (b) there is no evidence that would lead a reasonable fact-finder to disbelieve DRBA's legitimate, non-discriminatory reason for terminating Plaintiff; (c) he has failed to establish a hostile work environment claim against DRBA; and (d) he cannot establish a *prima facie* claim of retaliation under the ADEA.

2.      Plaintiff cannot establish a claim for a violation of the ADA because he fails to show that the DRBA "regarded" him as having a disability, as defined by the statute. Moreover, the record lacks any evidence with respect to a complaint made by Plaintiff to DRBA (or the Academy) on the basis of disability discrimination. As Plaintiff has not engaged in protected activity under the ADA, he cannot maintain a retaliation claim.

3.       Summary judgment should be entered on Plaintiff's claims relating to First Amendment retaliation because: (i) his alleged complaint to DRBA was not a "matter of public concern" and thus not considered "protected activity" for purposes of First Amendment retaliation; and (ii) Plaintiff cannot establish a *prima facie* claim where the decision to terminate him was made before Plaintiff purports he made a complaint of discrimination.

## STATEMENT OF FACTS

### I.     The Parties and their Employment Relationship

DRBA was created in 1962, by an interstate compact between Delaware and New Jersey.[2] DRBA operates the Delaware Memorial Twin Bridges; the Cape May-Lewes Ferry system; the Forts Ferry Crossing; and the Wilmington Airport (ILG), Millville Executive Airport (MIV), Cape May Airport (WWD), Delaware Airpark (33N), and the Civil Air Terminal (DOV).

---

[2] 17 *Del. C.* § 1701, *et seq.*

Plaintiff was given a conditional offer of employment as a Patrol Officer Recruit by DRBA on August 31, 2023. (A1). His continued employment with DRBA was contingent on successful graduation from the Dover Police Academy, and completion of a one-year probationary period thereafter. (A1; A54:13-22[3]).

Beginning in or around September of 2023, Plaintiff attended DRBA's Pilot Recruit Program, which was an approximately one-month long training program to prepare recruits for the Academy. (A1; A79:10-24; A80:1-4). His training commenced at the Academy in or around October of 2023. (D.I. 1 at ¶ 23). From October of 2023 until his dismissal on December 28, 2023, Plaintiff attended training at the facility, which was conducted by the instructors of the Academy – not DRBA. (A64:22-25; A65:1-3; A66:11-23).

## II.     DRBA's Hiring Process

Applicants for police recruits, who are not already certified officers, are initially screened through a written and physical fitness test. (A58:22-25; A59:1). If the applicant passes both screening tests, he or she is interviewed by a three-member panel, typically consisting of a sergeant or corporal, and two lower-ranking officers. (A58:5-15). Thereafter, the applicant meets with Colonel Wayne McFadden ("McFadden"), the Police Administrator of the DRBA, and a Human Resources ("HR") representative. (A58:5-7). The recruits are then ranked by DRBA administrators, and based upon their rank, certain recruits receive a conditional offer of employment. (A59:18-25; A60:1-11).

The selected police recruits are then onboarded by DRBA and participate in a month-long Pilot Training Program at the DRBA facility, in an effort to physically prepare the recruits for the Academy. (A45:5-9; A46:24-25; A47:1-17). Following the 30-day training, the recruits attend the

---

[3] Citations to deposition testimony are referenced by the Appendix Page and Line Numbers from the transcript.

Academy, at which point the recruits' sole dealings are with Academy staff. (A47:19-22). During the time the recruits attend the Academy, DRBA receives regular updates with respect to its recruits from Academy staff. (A50:20-23). The recruits that successfully complete their training at the Academy return to DRBA for a two-week orientation, and a field training program thereafter. (A47:19-25; A48:1-25; A49:1-6). Upon completion, the recruits are placed on a one-year probationary period during which they are assigned to a specific troop. (A49:7-11).

A recruit who fails to successfully complete the Academy is automatically terminated from his or her conditional employment with DRBA, as the recruit has failed to obtain the required certification to qualify as a police officer – a requirement for the position. (A56:24-25; A57:1). Recruits do not have the opportunity to attend the Academy a second time as part of this conditional offer of employment, nor are they sent to another academy for training. (A62:4-24).

III.    **Plaintiff's Training At The Academy**

The Academy operates as a paramilitary organization, and its responsibility is to instill in the recruits: discipline, respect, attention to detail, and ability to follow orders. (A69:3-13). One of the Academy's most significant functions is to create stressful situations for the recruits in a controlled environment, to ensure that they are able to handle situations that they will encounter on the job, at which point, making the correct decision could be a matter of life or death. (A69:1-25; A70:1-5).

While at the Academy, Plaintiff had a difficult time keeping up with his fellow recruits during physical fitness exercises. (A33:12-17). Academy staff expressed concern over the fact that Plaintiff would become lethargic and hyperventilate frequently during physical training, and had a difficult time recovering. (A30:2-14; A34:9-13). In light of this, Academy staff often modified Plaintiff's physical exercises to allow him to continue with his training in a safe manner. (A31:25; A32:1-8).

4

In order to graduate from the Academy, recruits are required to successfully complete their coursework, which includes practical application of the subject matter. One of the required courses for recruits is Tactical Medical ("TAC Medical"). The final testing for the TAC Medical course involves two distinct parts: (1) the practical scenario, in which the recruit is to respond to an emergency scene with an injured officer; and (2) the question and answer ("Q&A") portion following the practical, in which the Academy staff ensures that the recruit has a firm grasp and understanding of the relevant skills. (A38:17-25; A39:1-25; A40:1-13). The recruit must pass both parts in order to successfully complete the course. (A40:1-13).

A recruit failing the TAC Medical is typically permitted to re-test. (A41:14-17). Plaintiff was permitted to re-test twice (for a total of three attempts), along with another member of his class. (A41:20-25; A42:1-5). On his first attempt, Plaintiff failed the practical portion of the exam, so Academy staff did not proceed to the Q&A portion. (A81:21-24; A82:1-3; A72:1-4). Plaintiff was permitted to re-test later on the same day, at which point he passed the practical but failed the Q&A portion. (A82:9-22; A72:4-7). Academy staff provided Plaintiff with another attempt to complete the TAC Medical on December 28, 2023; however, this time, Plaintiff again failed the practical, but passed the Q&A portion. (A82:23-24; A83:1-7; A72:7-9).

On his final attempt, Plaintiff did not pass the practical portion for several reasons. First, he failed to check the tightness of the tourniquet until prompted to do so by an instructor. (A84:11-18). Similarly, he required prompting by Academy staff to secure the tail of the tourniquet on the gunshot wound. (A84:19-24; A85:1). Finally, Academy staff informed Plaintiff that he requested assistance from the other officer, who was securing the scene, for an extended period of time, which in essence, left the scene unsecure. (A86:16-24; A97:1-3). Plaintiff was unable to pass the TAC Medical test on his third attempt, leading to his dismissal from the Academy. (A35:9-16).

**IV.    Plaintiff's Dismissal From The Academy And Subsequent Termination From DRBA**

Plaintiff admits in his deposition that by failing one portion of the TAC Medical examination, he failed the entire evaluation. (A85:14-20). The record is also clear that recruits who fail the test are required to retest on both portions, and not just the section that they failed. (A43:5-7; A74:7-19). After Plaintiff failed the TAC Medical examination three times, the Academy made the decision to dismiss him from their program. (A35:6-18). Plaintiff was dismissed on December 28, 2023, the same day of his third unsuccessful attempt at the testing. (A36:1-12).

Sergeant William Draham ("Draham") of DRBA was notified by Academy staff that Plaintiff had been dismissed due to unsuccessful completion of the TAC Medical course. (A36:5-14; A51:14-17). As dismissal from the Academy rendered Plaintiff unable to meet the terms of his conditional offer of employment with DRBA, Draham requested that Academy staff notify Plaintiff to return his DRBA equipment the next day. (A52:24-25; A53:1-5). As the evidence in the record shows, recruits who are dismissed from the Academy are terminated from their employment with DRBA – the procedure followed in this instance did not deviate from DRBA's standard course of operations. (A62:12-18).

**V.    Plaintiff's Complaint of Unfair Treatment**

As an initial matter, Plaintiff's sworn statements, both in his responses to DRBA's Interrogatories as well as his deposition testimony, have been wholly inconsistent. For instance, in his responses to DRBA's First Set of Interrogatories, Plaintiff states that following his termination, he called DRBA's Chief Human Resource Officer, Charlotte Crowell, and left her a voicemail expressing his desire to file a complaint with respect to alleged discrimination suffered at the Academy. (A16 at ¶ 12). Upon DRBA's request for his phone records, Plaintiff indicated that he

in fact did not make a call to Crowell to file a complaint. (A25 at ¶ 27; A90:20-24; A91:1-24; A92:1-24; A93:1-19).[4]

Similarly, Plaintiff alleges in his Complaint only that he reported the Academy's purported discriminatory acts to DRBA following his dismissal and termination. (Compl. at ¶ 53). Plaintiff makes no reference throughout his Complaint of discrimination suffered by DRBA, nor does he indicate that he made any reports to DRBA about discrimination prior to his dismissal. Plaintiff's responses to DRBA's First Set of Interrogatories also indicate that he only articulated his grievances against Academy staff to DRBA following his termination. (A16 at ¶ 12). In his deposition, however, Plaintiff indicates that he notified McFadden that he was being targeted by the Academy due to his age, ***prior*** to his termination. (A76:23-24; A77:1-24; A78:1-14).

In addition, at his deposition, Plaintiff initially clearly indicated that no DRBA employee discriminated against him on the basis of his age. (A99:13-20). However, later in his testimony – and for the first time in this action – Plaintiff alleged that DRBA employees did make discriminatory comments towards him based on his age. (A103:25-17). Similarly, Plaintiff first states that DRBA employees discriminated against him on the basis of a perceived disability, but later holds the opposite position. (A99:21-24; A100:1-24; A101:1-14; A105:13-16).

Simply put, Plaintiff's account of factual events is inconsistent at best, and ever-changing to mold to his theory of claims.

In contrast, McFadden credibly testified in his deposition – consistent with Pierce's Complaint and responses to DRBA's First Set of Interrogatories – that the first time he became

---

[4] Plaintiff maintains that he contacted Darryl Anderson to complain of discrimination, which Anderson failed to investigate. Anderson contends that he was experiencing issues with his DRBA telephone messaging system and was on vacation or out on leave for significant periods during that timeframe, and as such, did not receive any such message. *See* Declaration of Darryl Anderson, which has been filed contemporaneously, is included in the appendix for ease of reference at A107.

aware of Plaintiff's complaint of mistreatment at the Academy was from Draham, following Plaintiff's termination. (A61:8-19). The record is also clear that Plaintiff made no written complaints to DRBA with respect to any alleged discrimination, nor did he follow the protocol for reporting as set forth in DRBA's EEO Policy (i.e., reporting to DRBA's staff attorney, via a web form, or by calling the hotline), of which Plaintiff was provided a copy. (A94:9-12; A95:22-24; A96:1-24; A97:1-24; A98:1-21).

## VI.    Plaintiff's Present Claims

Plaintiff now contends that DRBA discriminated and retaliated against him in violation of the ADEA and ADA, and further retaliated against him for his engagement in activity protected by the First Amendment.

The record is devoid of any evidence, or even allegations, that Plaintiff was subjected to a hostile work environment by DRBA or its employees. Plaintiff has also provided no evidence in support of his claim that DRBA terminated him in retaliation for complaining of discrimination. Indeed, as noted above, Plaintiff's first report of unfair treatment was not until after his dismissal from the Academy and termination from DRBA. In addition to the lack of temporal proximity to support a retaliation claim, Plaintiff's articulation of mistreatment does not qualify as protected activity under the First Amendment.

For these reasons, DRBA is entitled to summary judgment in its favor on each of Plaintiff's claims.

**ARGUMENT**

**I.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment shall be granted if there is no genuine issue as to any material fact. The moving party bears the burden of proof.[5] Material facts are those which could alter the outcome, and a dispute is "genuine" if there is evidence on the record "from which a rational person could conclude the position of the person with the burden of proof on the dispute issue is correct."[6] While all facts are viewed in the light most favorable to the nonmoving party, "[t]he mere existence of some evidence in support of the nonmoving party…will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue."[7]

To survive summary judgment, Plaintiff "may not rest upon the mere allegations or denials of his pleadings, but instead, must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice."[8] The moving party is entitled to judgment as a matter of law if the nonmoving party fails to sufficiently establish an essential element of its case for which it has the burden of proof.[9]

For the reasons that follow, DRBA is entitled to summary judgment with respect to each of Plaintiff's claims.

---

[5] *Ashley v. Bayhealth Med. Ctr., Inc.,* 869 F. Supp. 2d 544, 550 (D. Del. 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986)).

[6] *Id.* (quoting *Horowitz v. Fed. Kemper Life Assurance Co*., 57 F.3d 300, 302 n. 1 (3d Cir.1995)).

[7] *Id.* (internal citations omitted).

[8] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (quoting *D.E. v. Central Dauphin Sch. Dist.,* 765 F.3d 260, 268-69 (3d Cir. 2014)) (internal quotation marks omitted).

[9] *Ashley v. Bayhealth* at 550 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II.     DRBA Is Entitled To Summary Judgment on Plaintiff's ADEA Claim

### A.     Plaintiff Fails to Establish a *Prima Facie* Case of Age Discrimination

As a threshold matter, summary judgment should be granted because Plaintiff cannot meet his *prima facie* burden. In order to establish a *prima facie* case of age discrimination, Plaintiff must show that: (1) he is at least 40 years of age; (2) he is qualified for the position in question; (3) he has suffered an adverse employment action; and (4) the adverse action was due to his age.[10] If Plaintiff is able to meet this initial burden, the burden then shifts to the employer to proffer a legitimate, non-discriminatory reason for its actions. The burden then returns to Plaintiff, who must present evidence to rebut the employer's reasons for its actions.[11] To discredit the employer's proffered non-discriminatory motives, Plaintiff:

> cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'[12]

Plaintiff's burden of proof is much heavier at this stage of the *McDonnell-Douglas* analysis.[13]

---

[10] *Moore v. Staples, Inc.,* 635 F. Supp. 2d 337, 343 (D. Del. 2009).

[11] *Alred v. Eli Lilly & Co.*, 771 F. Supp. 2d 356, 363 (D. Del. 2011).

[12] *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (*quoting Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)); *see also Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) ("The question is not whether the ratings were right but whether the employer's description of its reasons is honest"); *Alred v. Eli Lilly*, F. Supp. 2d at 363 (D. Del. 2011) ("a plaintiff must show a defendant's reasons are so weak, incoherent, implausible, or inconsistent that they lack credibility).

[13] *Fuentes*, 32 F.3d at 765 ("this standard places a difficult burden on the plaintiff").

1.      **Plaintiff Was Not Qualified for the Position in Question**

First, Plaintiff cannot show that he was qualified for the position in question. Plaintiff was hired for the position of Patrol Officer for DRBA, and his offer letter explicitly outlined that his continued employment with DRBA was conditioned upon successful completion of the Academy. (A1). Indeed, the position of Patrol Officer requires that the individual be certified by the Delaware Council on Police Training as an officer. (A5). Upon dismissal from the Academy, Plaintiff was notified that his employment with DRBA was terminated, as he did not successfully complete the requirements (i.e., graduation from the Academy), as required for the position. (A6).

There is no doubt that by failing to successfully graduate from the Academy – and become certified as a police officer – Plaintiff was no longer objectively qualified for the position in question with DRBA. Thus, DRBA is entitled to judgment in its favor with respect to Plaintiff's ADEA claims.

2.      **DRBA Had Legitimate, Non-Discriminatory Reasons
        for Terminating Plaintiff's Employment And There is
        No Evidence Which Would Lead a Reasonable Fact-
        Finder to Disbelieve DRBA's Proffered Reason**

Even if Plaintiff could establish a *prima facie* claim, he cannot overcome DRBA's legitimate, non-discriminatory reason for his termination. As discussed above, Plaintiff's termination from employment with DRBA was based solely on Plaintiff's failure to complete the Academy and receive the requisite certification for the position. DRBA follows this procedure for ***all*** recruits, and Plaintiff has failed to show that there was any discriminatory animus and/or retaliatory motive in the manner in which it was applied to him. (A62:4-18 (stating that in his 30 years of policing, he is not aware of any individual who was permitted to go through the Academy a second time or sent to another academy after dismissal)).

Moreover, Plaintiff has maintained throughout this litigation, both in his Complaint and responses to DRBA's Interrogatories, that DRBA did not discriminate against him on the basis

11

of his age. Even in his deposition, Plaintiff first clearly indicates that no DRBA employee discriminated against him on the basis of his age. (A99:13-20). However, he later contradicts his own testimony and contends that DRBA employees did make discriminatory comments towards him based on his age. (A103:14-17). Plaintiff now faces a higher burden to establish the elements of his claim and survive summary judgment.[14] The record contains no evidence reconciling the inconsistencies in Plaintiff's sworn statements.

Because DRBA has produced unrebutted evidence that its decision to terminate Plaintiff's employment was based solely on dismissal from the Academy, the Court should enter summary judgment in DRBA's favor on Plaintiff's ADEA claim.

### B. Plaintiff Has Failed to Establish a *Prima Facie* Case of Retaliation Because His Alleged Complaint of Unfair Treatment Occurred After His Termination

An ADEA retaliation claim is also subject to the *McDonnell Douglas* burden shifting framework as described *supra*. In order to state a *prima facie* case of retaliation, Plaintiff must demonstrate that (1) he engaged in activity protected by the ADEA; (2) DRBA took an adverse employment action against him ***after or contemporaneous with*** the protected activity; and (3) there is a causal link between the protected activity and adverse action.[15]

The only alleged complaint made by Plaintiff to DRBA about mistreatment he suffered at the Academy was made ***after*** he was already terminated by DRBA (i.e., following the adverse

---

[14] *See Fowler v. AT&T, Inc.,* 19 F.4th 292, 304 (3d Cir. 2021) (holding that plaintiff must offer an explanation for the apparent contradiction) (citing *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 797 (1999) ("[T]he court should *require* an explanation of any apparent inconsistency with the necessary elements of [the]…claim")); *Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 117-118 (3d Cir. 2003) ("We have similarly applied *Cleveland*….where, as here, the [plaintiff] clearly made a contradictory assertion after benefitting from a previous sworn assertion, the court or agency thus having accepted the previous assertion.") (citing *Motley v. N.J. State Police*, 196 F.3d 160, 164–66 (3d Cir.1999)).

[15] *Alja-Iz v. U.S. Virgin Islands Dep't of Educ.,* 626 F. App'x 44, 47 (3d Cir. 2015).

action). (Compl. at ¶ 53; A16 at ¶ 12; A61:13-19; A67:19-25; A68:1-15; A88:17-24; A89:1-18). It is not possible for Plaintiff to suffer an adverse employment action for purposes of this retaliation claim, when his complaint was made after he was already terminated.[16]

Consequently, DRBA is entitled to summary judgment in its favor on Plaintiff's ADEA retaliation claim.

### C.    The Alleged Comments Made By DRBA Do Not Give Rise To a Hostile Work Environment Claim

In order to maintain a hostile work environment claim under the ADEA, Plaintiff must "show that [his] workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment."[17] Isolated incidents and offhand comments are insufficient to rise to the level of a hostile work environment.[18]

As an initial matter, "[t]he Third Circuit has not formally recognized age-based harassment (or a hostile work environment claim on the basis of age) under the ADEA."[19] Assuming *arguendo,* that such a claim is cognizable under the ADEA, the conduct of which Plaintiff complains amounts to nothing more than "offhand comments," and certainly do not rise to the level of "severe and pervasive" as required for such a claim. For instance, as it relates to DRBA, Plaintiff alleges only that officers – which he cannot name – made comments such as "how old are you?", "are you really that age?", and "I can't believe you're doing this." (A104:8-13). Even the comments Plaintiff

---

[16] *See Glanzman v. Metro. Mgmt. Corp.,* 391 F.3d 506, 516 (3d Cir. 2004); *Alja-Iz v. Dept. of Education*, 626 F. App'x at 44 (3d Cir. 2015).

[17] *Pierce v. Donahoe,* 963 F. Supp. 2d 366, 376 (D. Del. 2013) (internal quotation marks and citations omitted).

[18] *Katz v. Beebe Healthcare,* 2025 WL 1094406, at *13 (D. Del. Apr. 11, 2025).

[19] *Pierce,* 963 F. Supp. 2d at 376. (granting defendant's motion for summary judgment on this claim); *Blozis v. Mellon Tr. of Delaware Nat. Ass'n,* 494 F. Supp. 2d 258, 272 (D. Del. 2007) (declining to recognize a hostile work environment claim on the basis of age discrimination).

13

alleges his fellow recruits and instructors at the Academy made, such as calling him "Pops," are not severe and pervasive enough to survive summary judgment.[20]

For these reasons, the Court should grant summary judgment in DRBA's favor on Plaintiff's hostile work environment claim under the ADEA.

### III.    DRBA Is Entitled To Summary Judgment Because Plaintiff Cannot Establish All Elements For a Claim of Perceived Disability Discrimination

In order to establish a *prima facie* disability discrimination claim, Plaintiff must show that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an adverse employment decision as a result of discrimination."[21] If Plaintiff establishes a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its employment decision."[22] Once the employer states a legitimate basis for its decision, the burden shifts back to plaintiff to show that the proffered reasoning is a pretext for discrimination.[23] A showing that the employer's explanation for the adverse action was wrong or mistaken is insufficient – rather, Plaintiff must establish that the actual basis for the employment decision was discriminatory.[24]

#### A.    Plaintiff Fails to Establish That He Was "Regarded As" Having a Disability By DRBA

Plaintiff alleges, in a conclusory fashion, that Defendants took adverse actions against him "because of [Defendants'] perceptions he was disabled, unable to perform the essential functions

---

[20] *See Abraham v. Abington Friends Sch.*, 215 F. App'x 83, 85 (3d Cir. 2006) (holding that comments to plaintiff such as "old head" and "old motherf***er" did not rise to the level of severe and pervasive required for a hostile work environment claim).

[21] *Callan v. City of Dover,* 65 F. Supp. 3d 387, 396 (D. Del. 2014) (internal citations omitted).

[22] *Id.* (citing *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994)).

[23] *Id.*

[24] *Id.*

of his job, and had life-threatening heart problems…". (Compl. at ¶ 62). The only other fact Plaintiff offers in support of this contention – which relates only to the Academy, and not DRBA – states that the Academy required Plaintiff to purchase a watch that monitored his heart rate. (Compl. at ¶ 31).[25]

As an initial matter, Plaintiff has failed to plead any facts with respect to DRBA which give rise to an inference of discrimination on the basis of perceived disability.[26] In his deposition, Plaintiff was unable to provide any additional factual support for this claim. (A99:21-23; A101:2-24; A102:1-24; A103:1-11). Ultimately, Plaintiff expressed that no employee of DRBA made any disability-related discriminatory comments directed to him. (A105:13-16).

Moreover, in order to establish the first element of an ADA claim based on a perceived disability, Plaintiff must show that the employer regarded him "to be suffered from an impairment within the meaning of the [ADA], not just that the employer believed the employee to be somehow disabled."[27] An employer's awareness of an employee's impairment "is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action."[28] Plaintiff in the instant matter has provided ***no*** evidence to support

---

[25] Plaintiff notes in his Complaint that the Academy "required" him to purchase a watch, but concedes in his deposition that it was not required, and rather "strongly suggested" by the Academy to ensure his safety. (Compl. ¶ 31, A106:1-20).

[26] *See Alja-Iz v. U.S. Virgin Islands Dep't of Educ.,* 626 F. App'x 44, 46 (3d Cir. 2015); *Anderson v. Wachovia Mortg. Corp.,* 621 F.3d 261, 275 (3d Cir.2010) (in order to establish a *prima facie* case of discrimination, facts are needed to show "a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent").

[27] *Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 381 (3d Cir. 2002) (internal citations omitted).

[28] *Kelly v. Drexel Univ.,* 94 F.3d 102, 109 (3d Cir. 1996) ("If we held otherwise, then by a parity of reasoning, a person in a group protected from adverse employment actions, *i.e.*, anyone, could establish a *prima facie* discrimination case merely by demonstrating some adverse action against the individual and that the employer was aware that the employee's characteristic placed him or her in the group, *e.g.*, race, age, or sex.") (citing *Chandler v. City of Dallas,* 2 F.3d 1385, 1393

15

his contention that DRBA perceived Plaintiff as having a heart problem, much less that it made its decision to terminate Plaintiff's employment on such basis.

### B.    Plaintiff Has Not Established That He Was Qualified To Perform the Essential Functions of the Job

Even if Plaintiff could show that he was "regarded as" having a disability, he has failed to show that he was qualified for the position in question. The inquiry as to whether an individual is qualified is separated into two parts: (1) "whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position."[29] This determination is made at the time of the employment decision, rather than the time of the lawsuit.[30] With respect to whether a job duty is an "essential function," the Third Circuit has held that

> [it] turns on whether it is 'fundamental' to the employment position…A job function may be considered essential for any of several reasons, including, but not limited to, the following:
>
> (i) The function may be essential because the reason the position exists is to perform that function;
>
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.[31]

---

(5th Cir. 1993)(finding that even employer's belief that plaintiff could not safely perform particular tasks was insufficient to establish the employer regarded plaintiff as disabled)).

[29] *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (citing 29 C.F.R. § 1630.2(n)(1)-(2)).

[30] *Id.* (citing *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir.1998)).

[31] *Id.* (citing 29 C.F.R. § 1630.2(n)(1)).

16

As set forth *supra,* Plaintiff was hired for the position of Patrol Officer for DRBA, and his offer letter explicitly outlined that his continued employment with DRBA was conditioned upon successful completion of the Academy. (A1). By failing to graduate from the Academy – and becoming certified as a police officer – Plaintiff was no longer objectively qualified for the position in question with DRBA. Thus, DRBA is entitled to judgment in its favor with respect to Plaintiff's ADA claims.

### C.    Plaintiff Cannot Rebut DRBA's Legitimate, Non-Discriminatory Reasons For Terminating His Employment

Even if Plaintiff could establish a *prima facie* claim, he cannot overcome DRBA's legitimate, non-discriminatory reason for his termination. As discussed above, Plaintiff's termination from employment with DRBA was based solely on Plaintiff's failure to complete the Academy and receive the requisite certification for the position. DRBA follows this procedure for **all** recruits, and Plaintiff has failed to show that there was any discriminatory animus and/or retaliatory motive in the manner in which it was applied to him. (A62:4-18 (stating that in his 30 years of policing, he is not aware of any individual who was permitted to go through the Academy a second time or sent to another academy after dismissal)).

Because DRBA has produced unrebutted evidence that its decision to terminate Plaintiff's employment was based solely on dismissal from the Academy, and there is **no** evidence on the record that DRBA made a single reference to a purported disability, the Court should enter summary judgment in DRBA's favor on Plaintiff's perceived disability claim.

### D.    Plaintiff Has Failed to Establish The Elements of a *Prima Facie* ADA Retaliation Claim

To establish a *prima facie* retaliation claim, Plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action **after or contemporaneous with**

the protected activity; and (3) there was a causal connection between his protected activity and the adverse action.[32]

Plaintiff has failed to establish that he engaged in any protected activity. He merely alleges in his Complaint that the Academy required him to wear a watch to monitor his heart rate. (Compl. at ¶ 31). Indeed, he makes no reference to any formal or informal complaints he filed with either the Academy or DRBA as a result of the alleged discrimination.

Consequently, the Court should enter summary judgment in DRBA's favor.

## IV. Summary Judgment Should Be Granted Because Plaintiff Fails to Establish *Prima Facie* Case for First Amendment Retaliation

To state a claim for First Amendment retaliation, Plaintiff must allege: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."[33] The former is a question of law, and the latter is a question of fact.[34] Once Plaintiff has established a *prima facie* claim, the burden shifts to the employer to show that it would have taken the same action, even in the absence of the protected activity.[35]

The allegations of Plaintiff's Complaint with respect to First Amendment retaliation are sparse and vague at best. Plaintiff contends that he "expressed concerns of age and disability-related discrimination to Defendants," which are activities protected under the First Amendment, and his termination thereafter was in retaliation of same. (Compl. at ¶¶ 64-65). It is of significance that the case law cited by Plaintiff in support is neither binding nor persuasive in this jurisdiction.

---

[32] *Clemons v. New Castle Cnty.,* 2020 WL 5978343, at *6 (D. Del. Oct. 8, 2020) (emphasis added) (internal citations omitted).

[33] *Hill v. Borough of Kutztown,* 455 F.3d 225, 241 (3d Cir. 2006).

[34] *Id.* (citing *Curinga v. City of Clairton,* 357 F.3d 305, 310 (3d Cir.2004)).

[35] *Justice v. Danberg,* 571 F. Supp. 2d 602, 613 (D. Del. 2008) (citing *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir.2002)).

Regardless, even applying the standards set forth therein, Plaintiff's present First Amendment retaliation claim fails.

In *Konits*, the Court held that if the underlying protected activity is a lawsuit, "the subject of the lawsuit must touch upon a public concern."[36] The plaintiff in *Kontis* alleged that she was subjected to ongoing retaliation for assisting another employee with a discrimination claim.[37] While the Court noted that a public employee's speech regarding discrimination in the workplace was of "public concern," it specified that it fell into the realm of protected activity under the First Amendment when it involved retaliation "against those who speak out against discrimination ***suffered by others***, including witnesses or potential witnesses in proceedings addressing discrimination claims."[38] Indeed, speech which is to "redress personal grievances" which "center[s] around issues solely related to…personal dissatisfaction with the terms and conditions of …employment" is not of "public concern," and thus not protected activity under the First Amendment.[39]

In the instant matter, Plaintiff provides no causal relation as it relates to his termination following any alleged complaints. He provides no timeline as to when he engaged in the alleged protected activity to when he suffered the adverse action (i.e., termination), to allow a factfinder to make inferences based upon temporal nexus. In fact, even per Plaintiff's own allegations, he did not notify DRBA of any alleged discrimination he suffered at the Academy until ***after*** his dismissal from the Academy (and thus termination from employment with DRBA). (Compl. at ¶ 53; A88:12-

---

[36] *Konits v. Valley Stream Cent. High Sch. Dist.,* 394 F.3d 121, 124 (2d Cir. 2005).

[37] *Id.*

[38] *Id.* (emphasis added).

[39] *See Id.; Lewis v. Cowen,* 165 F.3d 154, 163 (2d Cir. 1999); *Bell v. City of Philadelphia,* 275 F. App'x 157, 159 (3d Cir. 2008) (complaints solely about employee's own mistreatment by supervisors and co-workers was not a matter of public concern, "especially given that they arose only after [the employee's] discipline…").

24; A89:1-22). Certainly, Plaintiff cannot maintain an action for retaliation where the adverse action preceded the alleged complaint of discrimination.[40]

Assuming *arguendo* that Plaintiff did show temporal proximity sufficient to support a retaliation claim – which is explicitly denied – his claim still must fail because his speech is not considered "protected activity" for purposes of First Amendment retaliation. As the Supreme Court stated in *Connick v. Myers*:

> [W]hen a public employee speaks not as a citizen upon matters of public concerns, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.[41]

Plaintiff's alleged complaint to DRBA falls squarely within the conduct described by courts as a "matter…of personal interest," which does not constitute protected activity.[42] As such, DRBA is entitled to judgment as a matter of law with respect to Plaintiff's First Amendment retaliation claim.

## CONCLUSION

For at least the foregoing reasons, Defendant DRBA respectfully requests that all counts of Plaintiff's Complaint are dismissed against it.

---

[40] *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000) (in order to establish a *prima facie* case of retaliation, plaintiff must show that "the employer took an adverse employment action ***after or contemporaneous with*** the employee's protected activity.") (emphasis added).

[41] *Connick v. Myers,* 461 U.S. 138, 147 (1983).

[42] *Bell v. City of Philadelphia,* 275 F. App'x 157, 159 (3d Cir. 2008).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Alpa V. Bhatia*

Michael P. Stafford, Esquire (Bar I.D. 4461)
Alpa V. Bhatia, Esquire (Bar I.D. 6977)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Phone: (302) 571-6553; 571-6747
Email:  mstafford@ycst.com; abhatia@ycst.com

*Attorneys for Defendant, Delaware River and Bay
Authority*

Dated:  July 1, 2025

21