## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

STEPHEN L. PIERCE

       Plaintiff,

   v.

DELAWARE RIVER AND BAY
AUTHORITY; CITY OF DOVER, POLICE
ACADEMY; and WILLIE JOHNSON,
individually,

       Defendants.

Civil Action No. 24-679-RGA

### MEMORANDUM OPINION

John M. LaRosa, LAROSA & ASSOCIATES, Wilmington, DE; Timothy S. Seiler, KARPF, KARPF, & CERUTTI, P.C., Feasterville-Trevose, PA.

     Attorneys for Plaintiff.

Michael P. Stafford, Alpa V. Bhatia, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE.

     Attorneys for Defendant Delaware River and Bay Authority.

Daniel A. Griffith, WHITEFORD, TAYLOR & PRESTON LLC, Wilmington, DE.

     Attorney for Defendant City of Dover, Police Academy.

February ____, 2026



ANDREWS, U.S. DISTRICT JUDGE:

Before me are Defendants' motions for summary judgment. (D.I. 47, 50). The motions have been fully briefed. (D.I. 48, 51, 55, 56, 59, 60).

For the reasons set below, Defendants' motions are GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

This case centers around Plaintiff's claims under the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA") for events that occurred while Plaintiff was undergoing training at the Dover Municipal Police Academy ("Academy"). (D.I. 1 at ¶¶ 1, 8).

The Academy was contracted by the Delaware River and Bay Authority ("DRBA") to train the DRBA's officers. (*Id.* at ¶ 14). Plaintiff was hired by the DRBA to work as a police officer for the DRBA; continued employment in this role was contingent upon Plaintiff completing and passing a training course at the Academy. (*Id.* at ¶ 15). Plaintiff began training in October 2023, roughly one month after he was hired by the DRBA. (*Id.* at ¶ 23). Plaintiff was dismissed from the Academy for failing an emergency response scenario test ("ERST")[1] three separate times in December 2023, twice on December 8 and once on December 28. (*Id.* at ¶¶ 39, 41, 45). As a result of his dismissal from the Academy, Plaintiff was terminated by the DRBA. (*Id.* at ¶ 54).

---

[1] Defendant Academy refers to this test as the "Basic Tactical Medical practical" or TAC/MED. (D.I. 48 at 5). Defendant DRBA refers to it as "TAC Medical." (D.I. 51 at 5). I will refer to this test as the ERST throughout my opinion. The ERST consists of two parts. (D.I. 1 at ¶ 39). Part I consists of a practical skills test, graded pass/fail, that measures the candidate's "tourniquet application, casualty assessment, and related life-saving competencies." (D.I. 48 at 5, D.I. 1 at ¶ 39). Part 2 consists of an oral question-and-answer portion. (D.I. 48 at 6, D.I. 1 at ¶ 39).

Plaintiff was 51 years old at his time of hire. (*Id.* at ¶ 30). He alleges that he was subject to discriminatory and derogatory age-related comments throughout his time at the Academy. (*Id.* at ¶¶ 31-37). For instance, Academy staff referred to Plaintiff as "Pops" or "senior citizen," and staff made other inappropriate comments to Plaintiff such as, "[Y]our old ass won't be able to apprehend anyone." (*Id.* at ¶ 31). Plaintiff further claims that the Academy "manipulate[d] outcomes [] based upon discrimination where desired," and he argues that, in light of these comments, "Plaintiff was transparently and falsely failed by [the] Academy for discriminatory and retaliatory reasons." (*Id.* at ¶¶ 48, 52).

Plaintiff brings claims against the Academy and the DRBA under the ADEA and the ADA, on the grounds that Defendants created a hostile work environment, engaged in "intentional abuse and failed assignments and/or testing", improperly terminated Plaintiff from employment, and engaged in retaliation against Plaintiff for protected activity.[2] (D.I. 1 at ¶¶ 57-62). Defendants move for summary judgment on all claims. (D.I. 47; D.I. 50).

---

[2] Plaintiff's complaint had three other claims: (1) First Amendment Retaliation against the DRBA, the Academy, and Willie Johnson (an instructor at the Academy (D.I. 1 at ¶ 9)), (2) Defamation under 42 U.S.C. § 1983 against the Academy and Willie Johnson, and (3) Defamation under state law against the Academy and Willie Johnson. (D.I. 1 at 16-18). Plaintiff notes in his answering brief to the motion of the Academy and Willie Johnson, "[I]n an effort to narrow the claims for summary judgment and trial, [Plaintiff] has decided to voluntarily waive those claims." (D.I. 55 at 1 n. 1). Although this footnote is absent in Plaintiff's answering brief to the DRBA's motion, Plaintiff does not raise any arguments as to his First Amendment Retaliation claim in that brief (D.I. 56), and Plaintiff specifically notes that he wishes to proceed against the DRBA and the Academy only under the ADEA and the ADA. (D.I. 55 at 1 n. 1). These waivers occurred after Defendants had moved for summary judgment and written briefs in support. I will therefore grant summary judgment in favor of Willie Johnson on all claims, in favor of the Academy on the First Amendment Retaliation and Defamation claims, and in favor of the DRBA on the First Amendment Retaliation claim.

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A nonmoving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence. . . of a genuine dispute. . . ." Fed. R. Civ. P. 56(c)(1). The nonmoving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable

4

inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Moreover, to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but instead, must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (internal citations omitted).

## III.    DISCUSSION

I will address Plaintiff's arguments as they apply to each Defendant separately.

### A. The Academy

The Academy[3] moves for summary judgment under the theory that it was never Plaintiff's employer under the ADEA. (D.I. 48 at 3, 8-9). The Academy notes, with supporting citations to the record, that Plaintiff was hired by the DRBA, that the DRBA paid Plaintiff's wages and issued benefits, that no employment records for Plaintiff were ever maintained by the Academy, that the Academy's staff did not hire Plaintiff, that the Academy's staff did not possess the authority to retain or fire Plaintiff from the DRBA's payroll, and finally that the DRBA retained the ultimate authority to terminate Plaintiff from his employment with the

---

[3] I do not think that the Dover Municipal Police Academy is a legal entity. Rather, it is a City of Dover operation. It is defended by counsel for the "City of Dover." Nevertheless, I refer to Defendant as "the Academy."

DRBA. (D.I. 48 at 8; D.I. 1 at ¶¶ 15, 24, 26; D.I. 48, Ex. C at 64:4-7; D.I. 48, Ex. J. at 18:12-21, 29:16-25). Plaintiff does not cite to any record evidence rebutting the Academy.

Plaintiff instead cites three cases in his answering brief to argue that I should find the Academy liable under the ADEA on the theory that it was the DRBA's agent. (D.I. 56 at 16). None of these cases are availing.

Plaintiff's first case, *Pathan v. Connecticut*, interprets Title VII, not the ADEA. 19 F. Supp. 3d 400 (D. Conn 2014). *Pathan* relies upon specific statutory language found in Title VII making it unlawful for "training or retraining [and] on-the-job training programs to discriminate against any individual." *Id.* at 418 (citing 42 U.S.C. §2000e-2(d)). The ADEA does not contain any analogous statutory language, a fact that Plaintiff does not contest in his answering brief. (D.I. 56 at 16). I do not find *Pathan* applicable to Plaintiff's case.

In *Dunn v. St. Louis Cnty.*, the Court noted that Plaintiff had entered evidence into the record showing that the County Commission "developed the standards for firefighters with the defendant Academy, and its chairman forwarded these standards to the County Executive for his approval and submission to the [County] Council." 1989 WL 35541, at *2 (E.D. Mo. Mar. 31, 1989). From these facts, the Court found that there existed a genuine issue of material fact as to whether the Academy in *Dunn* could be liable as an agent under Title VII, because a rational factfinder could find that the Academy "was acting on behalf of and was subject to the control of the [County]." *Id.* In our case, however, Plaintiff has pointed to no record evidence suggesting that the Academy should be regarded as an agent of the DRBA. Plaintiff's sole sentence in its answering brief arguing to that effect reads, "Here, there is no dispute that the Academy was an agent of the DRBA in providing training to its recruits." (D.I. 56 at 16). There is no legal or factual citation for this sentence, and the Academy clearly disputes its supposed agency

relationship with the DRBA. (D.I. 48 at 8-9; D.I. 59 at 2-3). Thus, I do not think *Dunn* applies to Plaintiff's case.

Finally, Plaintiff cites *Anthony v. Ky. Just.*, 2023 WL 7931014 (Ky. Ct. App. Nov. 17, 2023). This case is an opinion by the Kentucky Court of Appeals interpreting a provision of Kentucky state employment law while ruling on the appropriateness of a motion to dismiss. *Id.* at *2-3. Its holdings are not applicable to Plaintiff's case.

I reject Plaintiff's agency theory.

Plaintiff alternatively argues that the Academy "separately acted as [Plaintiff's] joint employer." (D.I. 56 at 17). In the Third Circuit, the existence of an employment relationship (including a joint-employer relationship) focuses on "which entity paid the employees' salaries, hired and fired them, and had control over their daily employment activities." *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015) (cleaned up). As noted earlier, the undisputed record shows that the DRBA, and not the Academy, paid Plaintiff's salary and decided whether to hire or fire him. Therefore, the only question is whether the Academy exerted control over Plaintiff's "daily employment activities."

Plaintiff claims that while attending the Academy, he was required to use "their tools, equipment, location, uniform, under the direct daily control of the Academy and its instructors who determined his schedule, assignments, rules, discipline, curriculum, performance, testing, and importantly, dismissal." (D.I. 56 at 17; *see* D.I. 56, Ex. K, ¶ 3). Plaintiff cites to no case that would indicate that Plaintiff's statement would be sufficient to transform the Academy into Plaintiff's "joint employer" for the purposes of the ADEA. It is unclear whether the activities cited by Plaintiff qualify as "daily employment activities." *Faush*, 808 F.3d at 214.

I do not think that the Academy should qualify as Plaintiff's joint employer under the ADEA. Where Congress intended for employment discrimination statutes to cover training programs, it has explicitly written language into the statute doing so. As noted previously, under Title VII, "training or retraining, including on-the-job training programs" are prohibited from "discriminat[ing] against any individual." 42 U.S.C. § 2000e-2(d). Similarly, the ADA contains language prohibiting an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . job training." 42 U.S.C. § 12112(a). The ADEA contains no analogous statutory language, and I think that if Congress had intended the ADEA to cover training programs such as the Academy, it would have said so outright. In the absence of identified case law counseling me to do so, I will not stretch the text of the ADEA to cover a situation on which its silence seems conspicuous.[4] I do not think that the Academy should be considered Plaintiff's "joint employer" under the ADEA.

For the foregoing reasons, I grant summary judgment in favor of the Academy as to Plaintiff's ADEA claims.

As to Plaintiff's ADA claims, the Academy notes in a few words on page three of its opening brief, in its "Summary of the Argument" section, that the Academy was not Plaintiff's employer "under the Age Discrimination in Employment Act or the Americans with Disabilities

---

[4] My own research into this question did not turn up a definitive answer. At least one district court has noted, "Unlike Title VII, the ADEA does not prohibit discrimination in training." *Tratree v. BP N. Am. Pipelines, Inc.*, 2006 WL 626405, at *4 (S.D. Tx. Mar. 9, 2006), *rev'd on other grounds*, 277 F. App'x 390 (5th Cir. 2008). The EEOC issued a regulation in 1996 stating that the ADEA should be construed as covering "apprenticeship programs," 29 C.F.R. § 1625.21, but Plaintiff does not argue that the Academy qualifies as an "apprenticeship program" beyond one short and undeveloped allegation in Plaintiff's complaint. (D.I. 1 at ¶ 4). At any rate, even if Plaintiff had (successfully) advanced such an argument, under *Loper Bright Enters. v. Raimondo*, I "may not defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. 369, 413 (2024). I interpret the ADEA as not applicable to the Academy for purposes of the present case.

Act." (D.I. 48 at 3). The Academy does not develop this argument as to the ADA in the eighteen pages of its opening brief.[5] Plaintiff does not respond to the Academy's throwaway comment in his answering brief. Perhaps realizing its omission, the Academy devotes a little more space in its reply brief to arguing that the Academy was not Plaintiff's "employer" under the ADA (D.I. 59 at 2), although the sole case it cites in support of that proposition, *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32 (3d Cir. 1983), is not helpful to the resolution of Plaintiff's case. In *Zippo*, the Third Circuit addressed the question as to whether the plaintiffs, who worked as defendant's contracted salespeople, should be regarded as independent contractors or employees under the ADEA. *Id.* at 33, 38. *Zippo*'s facts thus do not assist me in reaching a determination of whether Plaintiff, under the ADA, should be considered an "employee" of the Academy while undergoing training there.

The briefing on this question is quite sparse. It is possible that Plaintiff's ADA claims against the Academy should fail because the Academy should not be considered Plaintiff's "employer" under the ADA. That said, as I have noted, there are sufficient differences between the text of the ADEA and the ADA such that what might be permissible activity under one statute could be prohibited activity under the other.[6] Moreover, it is axiomatic that "[a]rguments raised for the first time before a district court in a reply brief are deemed forfeited." *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023). The reason for this rule is one of "basic fairness[,] because the opposing party has no opportunity to respond to arguments raised

---

[5] One of the Academy's subsections in its Opening Brief reads, "The [Academy] Was Not Plaintiff's 'Employer' Under the ADEA." (D.I. 48 at 8). In a later section addressing Plaintiff's ADA claim, the Academy's main arguments are that Plaintiff was neither "an individual with a disability within the meaning of the ADA, [n]or [] regarded by any [Academy] decision-maker as disabled." (D.I. 48 at 11). The Academy also argues that Plaintiff's "dismissal was grounded exclusively in repeated objective test failure." (*Id.* at 12). The Academy makes no argument that the Academy was not Plaintiff's employer for the purposes of the ADA.

[6] For instance, the ADA forbids a "covered entity" from discriminating against a "qualified individual on the basis of disability in regard to . . . job training." 42 U.S.C. § 12112(a).

for the first time in a reply." *In re Arsenis*, 2025 WL 3754277, at *3 (D.N.J. Dec. 29, 2025).
Although the Academy technically does "argue" in its opening brief that it was not Plaintiff's
employer under the ADA, I regard such a passing and undeveloped statement as not giving
adequate or fair notice to Plaintiff as to what arguments to respond to in Plaintiff's answering
brief. I regard this argument as having been forfeited by the Academy.

   "A plaintiff presents a prima facie case of discrimination under the ADA by
demonstrating: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise
qualified to perform the essential functions of the job, with or without reasonable
accommodations by the employer; and (3) he has suffered an [] adverse employment decision as
a result of discrimination." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). The
Academy moves for summary judgment on Plaintiff's ADA claim on the grounds that Plaintiff
was neither "an individual with a disability within the meaning of the ADA, [n]or [] regarded by
any [Academy] decision-maker as disabled." (D.I. 48 at 11). "The ADA defines a disability as
(a) a physical or mental impairment that substantially limits one or more of the major life
activities of an individual; (b) a record of such impairment; or (c) being regarded as having such
an impairment." *Seibert v. Lutron Elecs.*, 408 F. App'x 605, 608 (3d Cir. 2010) (citing 42 U.S.C.
§ 12102(1)). Plaintiff does not argue that he had any actual disability, instead focusing his
argument on whether he was "regarded as" disabled by the Academy. (D.I. 56 at 22).

   The Academy argues that for Plaintiff to make a successful "regarded-as" claim, Plaintiff
must show that he was regarded as having "an impairment that would substantially limit a major
life activity" or a "*substantially limiting* impairment, not a mere concern about fitness for
strenuous activity." (D.I. 48 at 11, D.I. 59 at 4). This argument runs up against the ADA's
statutory language, which specifically notes that an "individual meets the requirement of 'being

10

regarded as having such an impairment' if the individual establishes that he or she has been

subjected to an action prohibited under this chapter because of an actual or perceived physical or

mental impairment whether or not the impairment limits or is perceived to limit a major life

activity." 42 U.S.C. § 12102(3)(A). As the Third Circuit has noted, in determining a "regarded-

as" claim, "it is the employer's perception which matters, and not the employee's actual

limitations." *Vierra v. Wayne Mem'l Hosp.*, 168 F. App'x 492, 496 n.3 (3d Cir. 2006).

　　　Plaintiff submits an affidavit from a fellow student at the Academy; this student asserts

that when the students "did physical activities . . ., negative comments were made about

[Plaintiff] dying, going into cardiac arrest, or questioning if [Plaintiff's] heart stopped. I

specifically recall [a member of the Academy's staff] yelling during an outdoor running activity

we have to 'stop because [Plaintiff's] heart will explode if we keep going.'" (D.I. 56, Ex. H at ¶

5(e)). Viewing these facts in the light most favorable to Plaintiff, I think a reasonable juror could

conclude that the Academy's staff regarded Plaintiff as having a heart condition, which would

qualify as a "perceived physical impairment" for the purposes of the ADA.

　　　The Academy argues briefly that the Academy's dismissal of Plaintiff "was grounded

exclusively in repeated objective test failure." (D.I. 48 at 12). Plaintiff does not dispute that he

failed the ERST three times (D.I. 56 at 11-12), but Plaintiff does dispute the "objectivity" of this

test. (D.I. 56 at 13). There is some evidence in the record to suggest that the Academy's

characterization of Plaintiff's failure of an "objective test" is somewhat overstated; for instance,

one of the Academy's instructors testified at deposition, "There [is] a level of subjectivity" for an

instructor in determining whether to fail a student on the ERST. (D.I. 56, Ex. I at 69:15).

Viewing this evidence in the light most favorable to Plaintiff, there exists an open question as to

whether Plaintiff was "objectively" unqualified to continue his training at the Academy.

11

Finally, Plaintiff must point to the existence of some evidence in the record that would permit a rational factfinder to find that he had suffered an adverse employment decision as a result of discrimination. Plaintiff offers the affidavit of a fellow student at the Academy, who states, "It was also my experience and observation(s) that Management subjectively failed or passed individuals . . . regardless of metrics, ability, knowledge or skills." (D.I. 56, Ex. H at ¶ 9). As noted earlier, this same student also noted that when students were called upon to perform physical activities, "[N]egative comments were made about [Plaintiff] dying, going into cardiac arrest, or questioning if his heart stopped." (Id.). Plaintiff also offers as evidence a recorded meeting, dated December 13, roughly two weeks before Plaintiff failed his third attempt at the ERST and was dismissed from the Academy, between Plaintiff and an Academy staff member. In this meeting, the staff member said to Plaintiff, "You got a couple scenarios that's getting ready to happen . . . that's going to push your fitness level to the max. . . . I don't want to put you in a position in which your health is going to be compromised." (D.I. 56, Ex. O at 3:1-8). From these pieces of evidence, a rational factfinder could conclude that Plaintiff's instructors had exercised a degree of subjectivity in failing him on his third attempt at the ERST and that they could have done so out of some disability-related discriminatory animus. Thus, after viewing the facts in the light most favorable to Plaintiff, I think Plaintiff has made out a prima facie showing of discrimination under the ADA.

Given that Plaintiff has made out a prima facie case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its employment decision." *Callan v. City of Dover*, 65 F. Supp. 3d 387, 396 (D. Del. 2014) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). The Academy will satisfy its "relatively light" burden of production "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory

12

reason for the unfavorable employment decision." *Fuentes,* 32 F.3d at 763. I think the Academy

has met this relatively light burden by pointing to Plaintiff's "repeated failure to meet a uniform,

objective graduation standard [i.e., the ERST.]" (D.I. 48 at 10). A test may include a "level of

subjectivity" and nevertheless serve as the basis for a legitimate nondiscriminatory reason for

hiring or final decisions.[7] Here, the evidence in the record demonstrates that "three [Academy]

instructors unanimously agreed that [Plaintiff] should be marked as failing the final exercise" on

at least two separate occasions. (D.I. 48, Ex. L at 2-3). The thorough report on Plaintiff's third

attempt at the ERST describes critical errors, such as Plaintiff's failure to properly secure a

tourniquet or his inability to medically intervene without repeated assistance from his security

officer. (*Id.* at 3). Taking this evidence as true, I think that Plaintiff's failure of his third ERST

attempt suffices for me to find that the Academy has articulated a legitimate and

nondiscriminatory reason for Plaintiff's dismissal.

For Plaintiff to survive summary judgment, he must "show by a preponderance of the

evidence that the employer's reasoning is a pretext for [discrimination]. This requires a showing

that not only was the employer's explanation false, but that discrimination was the real basis of

the employer's adverse employment action." *Callan,* 65 F. Supp. 3d at 396 (citing *Fuentes,* 32

F.3d at 763-65). Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that

a reasonable factfinder could rationally find them unworthy of credence and hence infer that the

employer did not act for the asserted non-discriminatory reasons." *Fuentes,* 32 F.3d at 765

---

[7] Many tests include a "level of subjectivity." Anyone who has ever graded essays (as I did for four years as a Bar Examiner) or who has acted as a judge at an ice skating competition (as I have not) knows that there is at least some "level of subjectivity" in the scoring. It does not follow that the scoring is "illegitimate" or "discriminatory."

(cleaned up). After viewing all facts in the light most favorable to the Plaintiff with this higher evidentiary standard in mind, I think that Plaintiff fails to carry this burden.

Plaintiff was dismissed from the Academy for failing his third attempt at the ERST. (D.I. 1 at ¶ 46). Plaintiff states that, "Academy management claims that tourniquet placement was what resulted in the failure, despite also admitting it was properly tightened during the examination." (D.I. 56 at 12). The Academy's records show that Plaintiff did not fail for improperly tightening his tourniquet, however, but for improperly securing it: "[Plaintiff] *tightened* the tourniquet, effectively shutting of[f] blood-flow to the extremity. However, he neglected to properly *secure* the tourniquet." (D.I. 48, Ex. L at 3, emphasis added). There is no contradiction in management's stated reasoning for Plaintiff's failure from which a reasonable factfinder could infer pretext. Plaintiff also claims, "[T]here was no instruction or direction as to time limits on how long you could utilize the assisting officer (which was a permissible tool, per instruction)." (D.I. 56 at 13). Yet Plaintiff admitted at deposition that he was permitted only "to request assistance from the person standing guard for a -- a *certain* amount of time." (D.I. 56, Ex. A at 112:7-9) (emphasis added).[8] Finally, Plaintiff claims that he failed this third attempt, because he did not notice "a single chest seal f[alling] out of [Plaintiff's] pocket." (D.I. 56 at 12). This was not a stated reason for his failure of the third attempt, and even if it were, it is unclear

---

[8] Plaintiff avers in an affidavit (D.I. 56, Ex. K at ¶ 7) that "there was no time frame as to how long we could use them [the assistance of the officer standing guard]." First, this affidavit is defective. Despite being signed by "Stephen Pierce" and being titled as such, it begins with the statement "My name is Gerald Garcia..." (*Id.* at ¶ 1). Second, the Third Circuit has held, "When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." *Fowler v. AT&T, Inc.*, 19 F.4th 292, 304 (3d Cir. 2021). Plaintiff testified at deposition that he was permitted only to use the assisting officer for a "certain" amount of time. This affidavit was written to "supplement [Plaintiff's] deposition." (D.I. 56, Ex. K at ¶ 2). Where it contradicts his earlier deposition testimony, as it does here, and there is no explanation for the contradiction, I will disregard it for the purposes of summary judgment.

how a reasonable factfinder could infer from this claim that the Academy had failed Plaintiff on pretextual grounds. (D.I. 48, Ex. L).[9] Plaintiff thus fails to carry his burden to show that a reasonable factfinder could find that his dismissal from the Academy occurred as a result of pretext.

The same analysis applies to Plaintiff's first two failures of the ERST.[10] Plaintiff points to no evidence in the record that would carry Plaintiff's burden of showing, by a preponderance of the evidence, that the reasons proffered by the Academy for Plaintiff's failures were pretextual and actually motivated by disability-related discrimination. Plaintiff claims that his exam rubric for his initial ERST "has 'pass' grades scribbled out and changed to 'fail' grades, without explanation." (D.I. 56 at 9; D.I. 56, Ex. N). Plaintiff argues that a "jury could easily question this, and find that [Plaintiff] had actually passed, but that these [marks] were changed to support a failing grade." (D.I. 56 at 26 n. 26). Plaintiff's claim that the grades were changed "without explanation" is simply untrue, however, as the explanations for these changes are noted on the

---

[9] Plaintiff also makes claims of various instances of direct discrimination directed at Plaintiff. (D.I. 56 at 19). "Direct evidence of discrimination is evidence that if believed would prove the discrimination without inference or presumption." *Day v. Glob. Logistics Sols., LLC*, 2024 WL 3927256, at *3 (M.D. Pa., Aug 23, 2024) (citing *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994)). Plaintiff's claimed direct evidence, such as his allegation that certain Academy staff members expressed "concern for [Plaintiff's] health" and his claim that he was required by Academy staff "to purchase and don a heart monitor", does not lead to a direct showing, absent some further inference or presumption, that would create a triable issue that Plaintiff's three failed attempts at the ERST and subsequent dismissal from the Academy had been caused by disability-related discrimination. (D.I. 56 at 20).

[10] For the sake of concision, and because the preliminary analysis with respect to each of Plaintiff's first and second failed attempts at the ERST would be substantially the same as that of Plaintiff's third failed attempt, I will assume that Plaintiff has presented a prima facie case that the Academy has rebutted as to the first and second attempts. I also assume that Plaintiff's claim for failed testing is connected with his claim for unlawful termination, because his dismissal stemmed from his three failures of the ERST. Thus, I only focus on whether Plaintiff has entered sufficient evidence rebutting the Academy's proffered explanation that his failures occurred for legitimate and nondiscriminatory reasons.

immediately following page in Plaintiff's grading rubric. (D.I. 56, Ex. N at 4). Plaintiff's own statement is "blatantly contradicted by the record" and I will "not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. A rational factfinder could not find that Plaintiff's initial failure was pretextual and that the real reason for his failure stemmed from disability-related discrimination by the Academy.

Plaintiff claims that he failed his second attempt at the ERST for "taking too long to answer the oral questions." (D.I. 56 at 9). This claim is belied by the Academy's records, which show that Plaintiff failed his second attempt because Plaintiff "would mix up concepts from CPR when answering questions related to traumatic injuries" and that Plaintiff "was not able to verbally demonstrate that he had retained the material that was taught to him the previous four days." (D.I. 48, Ex. H at 1). At any rate, even if Plaintiff had failed for taking too long to answer questions, I do not think that a rational factfinder could infer from this that Plaintiff's second failure was pretextual and that it actually stemmed from disability-related discrimination.

Plaintiff also advances a retaliation claim.[11] Plaintiff argues that he made various complaints of discrimination that constitute protected activity under the ADA. (D.I. 56 at 23). Plaintiff suggests that he may have been terminated from the Academy as a result of this protected activity. (*Id.* at 26). First, Plaintiff claims that he complained to named Academy staff members "after his dismissal from the Academy." (*Id.* at 15). To make a prima facie case of

---

[11] Plaintiff argues in a footnote in his answering brief, "The Academy makes no reference in its brief about [Plaintiff's] retaliation claims under the ADA or ADEA. As a result, any such arguments in opposition to these claims are waived." (D.I. 56 at 23 n. 19). This is a somewhat misleading statement. Plaintiff had originally brought a separate count of First Amendment Retaliation (D.I. 1 at ¶¶ 63-65) against Defendants, and the Academy responds to this count in its answering brief (D.I. 48 at 12-14). The arguments the Academy advances in this section of the brief are sufficient to defeat Plaintiff's retaliation claims under the ADA, and I do not regard the Academy as having waived or forfeited this argument.

retaliation, however, Plaintiff must show that "the employer took an adverse employment action

after or contemporaneous with the protected activity" and that "a causal link exists between the

employee's protected activity and the employer's adverse action." *Alja-Iz v. U.S. Virgin Islands

Dep't of Educ.*, 626 F. App'x 44, 47 (3d Cir. 2015) (citing *Abramson v. William Paterson Coll.

of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001)). Since Plaintiff himself admits that this complaint to

Academy staff occurred only after his dismissal from the Academy, a reasonable juror could not

conclude that this complaint could support Plaintiff's claim for retaliation.

Plaintiff makes a vague claim that he "mention[ed] to various supervisors over the last

month of his training at the Academy that he did not believe that it was appropriate to be

referencing his age and health problems." (D.I. 56 at 23). Plaintiff does not identify any further

details about these supposed complaints, and only through significant effort can I find anything

in the record that purports to support this claim.[12]  I think it is dubious whether this vague and

unsupported assertion can support a prima facie claim of retaliation. Nevertheless, even

assuming *arguendo* that Plaintiff had made out a prima facie case of retaliation, Plaintiff's doing

so would not end the inquiry. As with Plaintiff's unfair dismissal claims, the Academy must then

"advance a legitimate, non-retaliatory reason for its conduct." *Moore v. City of Phila.*, 461 F.3d

331, 342 (3d Cir. 2006). Plaintiff must then point to some evidence in the record enabling him to

"convince the factfinder both that the employer's proffered explanation was false, and that

---

[12] In the argument section, there is no cite to the record. In the factual section, there are about
fifteen pages of "material and disputed facts." (D.I. 56 at 1-15). I found this sentence, "During
[Plaintiff's] last month of training at the Academy, he had on several occasions mentioned to
various supervisors he didn't think it was appropriate or right to keep referencing his age, which
included [Plaintiff] mentioning both impropriety towards his age and perceptions of his health
problems, as he was able to keep up more than most. Exhibit G." (*Id.* at 11). Exhibit G (D.I. 56-
7) is Plaintiff's answers to interrogatories, consisting of eight pages of mostly single-spaced text.
In the last paragraph on page 7 of Exhibit G, the above-quoted sentence appears almost verbatim.

retaliation was the real reason for the adverse employment action." *Id.* "[T]he plaintiff has the ultimate burden of persuasion at all times." *Leftwich v. Sec'y U.S. Dep't of Treasury*, 741 F. App'x 879, 882 (3d Cir. 2018). As I have already explained earlier in this opinion, the Academy has pointed to Plaintiff's repeated failures of the ERST as a legitimate and non-retaliatory reason for Plaintiff's dismissal, and I don't think Plaintiff has entered evidence into the record that would meet its burden to show that the Academy's proffered explanation was false or pretextual. I therefore grant summary judgment in favor of the Academy on Plaintiff's retaliation claim.

Thus, after taking all facts in the light most favorable to Plaintiff, I think that no reasonable juror could find that Plaintiff had carried his evidentiary burden to show that the Academy manufactured Plaintiff's repeated failures of the ERST to serve as a pretext for Plaintiff's dismissal from the Academy and that Plaintiff's dismissal was actually motivated by disability-related discrimination. A reasonable juror would also be unable to find that Plaintiff had been dismissed from the Academy as a result of retaliation for making complaints with regard to disability-related discrimination. I thus grant summary judgment in favor of the Academy on Plaintiff's ADA claims as they pertain to "Termination from [the Academy]." (D.I. 1 at ¶ 61). I also grant summary judgment in favor of the Academy on Plaintiff's "failed assignments and/or testing" claim.[13] (*Id.*).

Plaintiff brings (1) a hostile work environment claim, and (2) an "intentional abuse" claim under the ADA (D.I. 1 at ¶ 61). Plaintiff notes in a footnote that "the Academy makes *no*

---

[13] Other than the three failures of the ERST, Plaintiff does not point to any other failed tests as a basis for the "failed assignments and/or testing" arguments. Plaintiff does make a passing remark in his answering brief to "purportedly fail[ing a baton test] before later passing." (D.I. 56 at 7). First, Plaintiff makes no reference to a "baton test" anywhere in his complaint. Second, Plaintiff does not claim that he suffered any adverse employment decision as a result of this "purported failure."

18

*reference* to [Plaintiff's] hostile work environment claims." (D.I. 56 at 20 n. 17). I have reviewed

the Academy's briefing and agree with Plaintiff.[14] Similarly, it does not appear that the Academy

has made any arguments regarding Plaintiff's claim of "intentional abuse."[15] I consider any

argument to have been forfeited as to these claims and will deny summary judgment as to

Plaintiff's hostile work environment claim and his claim of intentional abuse.

### B. The DRBA

The DRBA moves for summary judgment on Plaintiff's ADEA claim on the grounds that

Plaintiff was not qualified for his position. The DRBA correctly notes that Plaintiff's

employment offer was conditioned on his successful graduation from the Academy (D.I. 52 at

A1). Plaintiff does not contest that he in fact failed to graduate from the Academy. Plaintiff

argues instead that the DRBA "confirmed that [Plaintiff] was qualified for the position he held

when he was hired." (D.I. 55 at 17). Plaintiff's offer of employment was dated August 31, 2023.

(D.I. 52 at A1). Plaintiff was dismissed from the Academy on December 28, 2023 and

subsequently dismissed from the DRBA. (*Id.* at A6).

Plaintiff himself states, "It is axiomatic in the case law of the Third Circuit that in order

to be considered 'qualified' for purposes of a prima facie case of discrimination, a plaintiff is

only required to show that he possessed the objective qualifications for the position at the time of

---

[14] The Academy notes at the end of their opening brief that "Plaintiff's remaining theories, including hostile work environment . . . do not support individual liability." (D.I. 48 at 18). The context for this remark is that Plaintiff had originally brought some claims against Willie Johnson, a member of the Academy's staff. (D.I. 1 at ¶¶ 63-72). That said, Plaintiff's hostile work environment claim was clearly brought against the Academy and the DRBA and not against Willie Johnson. (*Id.* at ¶¶ 57-62). The Academy's brief argument against Plaintiff's hostile work environment claim would thus not be applicable at any event. I find that the Academy has left this claim unaddressed.

[15] It is unclear what legal theory Plaintiff proceeds under in advancing his claim of "intentional abuse." I regard this as intertwined with Plaintiff's claim of hostile work environment, and, for both purposes of summary judgment and trial, I will treat them as essentially the same.

the termination of his employment." (D.I. 55 at 17 n. 12); *Bernard v. K&D Factory Service, Inc.*, 2018 WL 338606, at *4 (M.D. Pa. Jan. 9, 2018) (cleaned up). The Third Circuit has stated, "[A]n employee must show she was qualified at the time of the adverse employment action, rather than at some earlier or later time." *Wilson v. [Children's] Hosp. of Phila.*, 2024 WL 4490601 (3d Cir. Oct. 15, 2024) (quoting *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1129 (9th Cir. 2020)). At the time of his termination by the DRBA, Plaintiff had already been dismissed from the Academy. According to Plaintiff's own statement of law and admissions of fact, Plaintiff was not qualified at the time he was terminated by the DRBA. Plaintiff fails to make out a prima facie case for termination due to age discrimination and I grant summary judgment in favor of the DRBA on this count.

Plaintiff advances a retaliation claim against the DRBA. (D.I. 55 at 24). Plaintiff alleges two instances where he complained to DRBA staff: once, on a phone call with a DRBA staff member "just before Christmas," and once to DRBA staff members "the day after his dismissal." (*Id.* at 25). Plaintiff's complaints made "after Plaintiff's dismissal" plainly cannot support a retaliation claim. Plaintiff's complaint made "just before Christmas" fares no better, because Plaintiff fails to point to any evidence in the record that would allow a reasonable factfinder to infer some causal link between Plaintiff's pre-Christmas complaint to the DRBA and Plaintiff's eventual dismissal from the Academy. Plaintiff devotes significant time in his answering brief to arguing, "The Academy's Reasons for Dismissal Are Directly Disputed and Highly Questionable," but he makes no claim that the DRBA had any hand in his dismissal from the Academy. (D.I. 55 at 26-29). Regardless, even if Plaintiff had successfully made out a prima facie case of retaliation against the DRBA for his dismissal from the Academy, as I have noted earlier in this opinion, there exists sufficient evidence in the record rebutting Plaintiff's claims of

pretextual dismissal. I grant summary judgment in favor of the DRBA on Plaintiff's retaliation claim.

Plaintiff advances a hostile work environment and an "intentional abuse" claim against the DRBA. The DRBA argues that various comments allegedly made by its staff to Plaintiff are insufficiently "severe and pervasive" to survive summary judgment on a hostile work environment claim. (D.I. 51 at 13-14). Plaintiff does not adequately respond to this argument.[16] Instead, Plaintiff notes that although the DRBA staff "were not the ones who directly made the comments . . . towards [Plaintiff], this does not absolve them of liability." (D.I. 55 at 22). Plaintiff grounds this argument on the theory that the Academy was "DRBA's agent [] and [Plaintiff's] joint employer." (*Id.*). As I noted earlier in this opinion, however, I find this theory unconvincing.

Plaintiff advances another theory as to why the DRBA might be liable for the Academy's alleged comments. Plaintiff argues that although the "Third Circuit has not addressed the question of an employer's liability for non-employee behavior . . ., a number of district courts in this circuit . . . have determined that an employer is liable for the harassment of an employee by a non-employee when (1) the employer knows or should have known of the conduct and (2) fails to take immediate and appropriate corrective action." (D.I. 55 at 22 n. 18) (quoting *Poe-Smith v. Epic-Health Servs.*, 2017 WL 915139, at *3 (D. Del. Mar. 8, 2017)). Many of the cases cited by Plaintiff in support of this argument appear to be sexual harassment cases and base their

---

[16] The extent of Plaintiff's counterargument can be found in one footnote where Plaintiff notes, with no citation to the record, "Such commentary and actions are [] objectively humiliating, and [Plaintiff] provided substantial testimony regarding how humiliating it was as well." (D.I. 55 at 20 n. 17). This footnote, however, is appended to Plaintiff's claim that the Academy's staff allegedly made derogatory comments to Plaintiff and does not address any derogatory comments allegedly made by the DRBA's staff.

21

decisions explicitly on an EEOC regulation specifically addressing employer liability for acts by

third parties in sexual harassment situations. *See* 29 C.F.R. § 1604.11(e). For instance, the

court's language in *Poe-Smith*, the lead case cited by Plaintiff, is derived almost word-for-word

from that EEOC regulation and cites specifically to it. *Poe-Smith*, 2017 WL 915139, at *3 (citing

29 C.F.R. § 1604.11(e)). In another case cited by Plaintiff, the court notes, "Courts that have

adopted the EEOC Guidelines [29 C.F.R. § 1604.11(e)] have applied them to cases concerning

patient conduct and have found that employers may be held liable for a patient's harassment of

an employee if the employer knew or should have known of the harassment and failed to take

appropriate remedial action." *Gunther v. Shelter Grp.*, 2014 WL 3869940, at *4 (D.N.J. Aug. 7,

2014) (internal citations omitted). Given the fact patterns found in Plaintiff's cited cases, and in

consideration of Plaintiff's own admission that, as a general matter, the "Third Circuit has not

addressed the question of an employer's liability for non-employee behavior" (D.I. 55 at 22 n.

18), I do not think that Plaintiff has adequately argued that the DRBA could be held liable for the

age and disability-related comments made by the Academy's staff.[17] I grant summary judgment

in favor of the DRBA on Plaintiff's hostile work environment and intentional abuse claims.

     Finally, Plaintiff makes a claim for "failed assignments and/or testing." Plaintiff does not

address this argument anywhere, and at any rate, this claim does not appear to be appropriately

directed toward the DRBA, as the DRBA did not fail Plaintiff on any assignments or tests while

Plaintiff was training at the Academy. I grant summary judgment in favor of the DRBA on this

claim.

---

[17] As I noted earlier in my opinion, even if Plaintiff had pointed to some EEOC regulation applicable to Plaintiff's case, under *Loper Bright*, I "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 603 U.S. at 413.

The above analysis is applicable to Plaintiff's ADA claims as well. Thus, I grant summary judgment in favor of the DRBA on all of Plaintiff's ADA claims.

## IV.    CONCLUSION

An appropriate order will issue.